Oyez, oyez, oyez. The Honorable Appellate Court, 5th District, State of Illinois is now in session. The Honorable Justice Cates presiding along with Justice Welch and Justice Vaughn. The first case this morning is 522-0278, Bilbrey et al. v. Decatur Memorial Hospital, etc. et al. Arguing for the appellant Samantha and Tuesday Bilbrey is Amelia Burgess. Arguing for the the appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. Good morning, Your Honor. Ms. Burgess, you represent the appellant. Are you ready to proceed? I am, Your Honor. Okay, you may proceed then. Thank you. May it please the court. Good morning. My name is Amelia Burgess and I am the appellant for Samantha and Tuesday Bilbrey. This is a single-issue case on appeal. The singular issue that the court is being asked to examine this morning is whether or not Dr. Garcia was an apparent agency of the defendant, Decatur Memorial Hospital, when he provided care to Samantha Bilbrey on October 15, 2010. When it comes to the question of apparent agency, this is an analysis that features two elements, both the holding out and the justifiable reliance elements of the apparent agency analysis. So the question is whether or not the hospital created a situation where it both held out to Dr. Garcia as its apparent agent and whether or not the plaintiff justifiably relied on the hospital to provide her medical care as opposed to an Before you begin, isn't the question here not whether he was an apparent agent, but the question is whether there is a question of fact to preclude summary judgment? Yes, Your Honor, absolutely. And thank you for that clarification. Yes, we are here today discussing whether or not the trial court properly granted summary judgment in favor of the defendant Decatur Memorial Hospital. And so the court is not required today to determine absolutely on a factual basis, whether or not Dr. Garcia was an apparent agent, but whether or not there was a reasonable question or a material question, genuine issue of material fact on that particular question. And I appreciate that clarification because it is an important distinction to be made because generally when it comes to the apparent agency analysis, it is a question of fact. And question of facts, as this court is well aware, are most properly decided by the fact finder, which in this particular case would be the jury serving in that particular role. So the question is not whether or not it is definitive that Dr. Garcia was an apparent agent, but whether or not this factual scenario and all of the factors that this court may consider create a general and genuine issue of material fact. And here, starting with the holding Allen analysis, there are a number of factors that the court can and should consider. And the courts have been very clear that no single factor is determinative. So it is looking at the plethora of information that is available on that holding out element. And to some extent, the holding out element is a two-step analysis. The first question is whether or not the hospital held itself out as a provider of emergency room care. If it did, then there is a presumption that the doctors providing that care are apparent agents of the hospital. The only way that presumption can be overcome is if the hospital does something that is sufficient in informing the patient that the care is being provided by independent contractors. Here, there is no dispute between the parties that Decatur Memorial Hospital held itself out as a provider of emergency room care. This is not in dispute. So the only question is whether DMH sufficiently informed the patient that her care was being provided by an independent contractor. And here, the only evidence that the defendant has presented that would allow that conclusion is a two-sentence disclaimer that was contained in two areas, both in the consent for care form that was signed by the hospital. Now, counter that with all of the evidence creating the presumption or the reasonable conclusion that Dr. Garcia was an apparent agent of the hospital. There were no signs in the hospital informing any of the patients that care was being provided by an independent entity such as Dr. Garcia's employer. Dr. Garcia did not wear any name tag indicating an affiliation with any entity outside of Decatur Memorial Hospital. Dr. Garcia did not tell Samantha or her father that he was not an employee or agent of the hospital, but rather was employed by a separate entity. So the only question here is whether or not that two-sentence disclaimer was sufficient when considering all of the other factors to remove from the question of whether there was genuine issue of material fact on the question of apparent agency. And here, the plaintiff has presented a two-pronged argument. First, that the language of the disclaimer itself in that two sentences was not clear and unequivocal. And second, that even if it were, it was presented to the plaintiff, to the patient, at a point in time that was simply too late for it to be able to overcome that reasonable conclusion that was made when the care and the physician-patient relationship had been established. And of course, also, even if this court were to find that the consent form was in some way clear and concise, that alone is not sufficient to remove this from a jury question and for the grant of summary judgment. Because even in the presence of an unambiguous independent contractor disclaimer, it is still merely a factor to be considered with regard to the holding out element and is not in and of itself dispositive of that question. So starting first with the language of the disclaimer, it is two sentences. The first sentence does state that certain categories of physicians are not agents of the hospital and are not personally employed by other entities, including emergency room physicians. However, the ambiguity in that language is then created by the second sentence, which says, even after that disclaimer or after that language, there are some physicians for whom that statement does not apply. And in order to find out who those physicians are, you need to call a telephone number of the hospital. That contradictory language is what creates an ambiguity. I noticed in the consent form that it lists a telephone number, but the website actually shows Dr. Garcia as being at the address of the hospital, doesn't it? Yes, Your Honor, it does. I mean, to this day, it actually shows him at the same hospital address. I looked it up. That is correct, Your Honor. And that is one of the other factors that weighs heavily in the analysis in this particular case, in that for the holding out analysis, the hospital was clearly in many ways signaling that Dr. Garcia was its employee. If you went to their website at that time, and apparently still to this day, and you searched for an emergency medical physician on the Decatur Memorial Hospital website, you would find Dr. Garcia's name. And nothing in that entry for Dr. Garcia, when you click on it and you get a profile page of that particular physician, nothing on that page indicates that he is not an employee of the hospital. And if we're looking at a reasonable person standard here, which is the standard for this particular analysis, a reasonable person would conclude after going to the hospital's website, searching for a type of physician, finding a name, going to that physician's profile page, and seeing that he is listed as an individual who is affiliated with the hospital, and whose address and his own personal telephone or business telephone number is that of the was bolstered by other language on the website where the hospital talks about the high quality of care that it provides through its emergency department, and refers to the physicians and hospitals who work there as, quote, our physicians. That is not ambiguous language when it comes to the reasonable conclusions that can be drawn from the way that that information was presented. And Polina would assert here, and did within our brief, that this clearly establishes that hospital was creating this impression publicly that all of the individuals who worked in the emergency room were their agents, whether they were employees or apparent agents, that they were closely affiliated with that hospital. So the only evidence that could potentially counteract this was that two-sentence disclaimer. And if the disclaimer was clear, then where is it in the documents that the father gives consent to the emergency room physicians? It is not present, Your Honor. And I think that that is also an important part of this particular analysis, because there was no consent for care directly with Dr. Garcia or his employer, the EMS. And so in the face of having only signed a single consent form to receive medical care from Decatur Memorial Hospital, that is the natural and maybe even necessary conclusion that Decatur Memorial Hospital is responsible for the care that is being provided to the patient, and as a result, that the physicians that are providing that care are apparent agents of the to the extent that no consent was signed directly with Dr. Garcia. And that certainly is another factor that this court can take into consideration when determining whether there was a genuine issue of material fact for the fact finder to decide in this matter. Doesn't the fourth line of the consent, though, say, I permit the doctor who attends me, his or her associates and assistants, hospital and its employees, and all other persons to treat me in the way they judge beneficial? Isn't that consenting to the doctor to provide care? Yes, Your Honor, but consenting through the hospital, it is a consent form signed and presented by Decatur Memorial Hospital. And so the question then becomes, was there anything in that particular language that would have notified the patient that the physicians providing that care that they're now consenting to through this consent form from the hospital, whether or that language would have placed the patient on notice that the physicians were not employees of the hospital. And here plaintiff's position is it did not. It is not a clear and unequivocal statement, but it could have been, right? It could have said the physicians that will be writing care to you are independent contractors or that they are not employees of the hospital, but you are nonetheless consenting to their care. So it is easy to consider how this could have been crafted in a different way to fully place the patients on notice that the physicians providing care to them were not the employees or agents of the hospital. And while again, no single thing is determinative, but also that the hospital would not be considered liable for their actions or was not responsible for the care that they provided, which some courts have found is an important part of this particular analysis to make sure that the plaintiffs are fully on notice of the employment status of the physicians and the implications of that. A little bit, if you will, about the fact that this consent form was signed after treatment began. How does that affect this? Yes, Your Honor. And thank you for that because it is also an important portion of the analysis because interestingly enough, no appellate court in the state of Illinois has determined an exact timeline for when the hospital must overcome the presumption that has been created that the physician is an apparent agent. But it is implicit in the case law that the patient is entitled to notice. Otherwise, there would be no need for anything in a consent form. The hospital could simply say at a later point in time, by the way, this individual was not our employee. But that is the direction that Illinois case law has gone in and has said that hospitals are required to inform the patients when physicians are not an apparent agent or employee of the hospital. But even in the absence of clear direction from the appellate courts, we are not without reasonable ways to interpret this particular information because implicit within that is this notion that patients should have a choice with the care that they're being provided. So as a result, the notice needs to come early enough so patients can exercise that choice. And in this particular instance, plaintiff has argued and suggested that an appropriate point in time to measure whether or not notice was timely is at the establishment of the physician-patient relationship. Because after the establishment of that relationship, the physician begins to engage in activities that would make it difficult for the patient to change course because of an after-the-fact notice as opposed to a pretreatment disclosure. And for example, in this particular case, the paperwork that provided this two-sentence disclosure was signed well after care had begun by Dr. Garcia. Dr. Garcia had already examined that then guided his treatment decisions. He had already ordered the CT scan and the CT scan had already been performed. And he had also ordered the blood tests and the blood had already been drawn. So that at the point in time that Tuesday Bilbrey arrived at the hospital and then Mr. Binkley went to sign the forms, the majority of Samantha's care had already been provided to her. So as a result, this particular disclosure that was provided by DMH was not a pretreatment disclosure, but it was an after-the-fact notice. And implicit in the case law is that the hospital has to be timely in overcoming the presumption that is created when it is holding itself out as a provider of medical care. So as a result, plaintiff's contention is that even if the language of the notice were clear, it simply was provided to the patient too late in this particular case to have any bearing on the holding out analysis of the agency inquiry. Thank you, Your Honor. And Ms. Burgess, you'll have a few minutes after Mr. Grady's argument. Any other questions, Justice Welsh? No questions. Justice Vaughn? No questions. Okay. Mr. Grady, on behalf of the hospital, would you like to proceed? Yes, Your Honor. Thank you. May it please the court. My name is Dylan Grady. I represent the hospital, Decatur Memorial Hospital, in this case. We're here on a review of Decatur Memorial Hospital's brand of summary judgment in favor of Decatur Memorial Hospital. As plaintiff's counsel has indicated, this is a fairly simple, sole issue of apparent agency, one-issue appeal. A hospital may be held liable vicariously for the acts of its independent contractors. However, in order to survive a motion for summary judgment on a claim of apparent agency, the plaintiff must present some evidence to satisfy each of the Gilbert factors established under Gilbert v. Memorial Hospital, 156 Illinois, 2nd, 511. Here in this case, plaintiff has failed to establish each of the Gilbert factors in order to defeat DMH's motion for summary judgment. As we've discussed, the first issue is whether or not there was a holding out of the holding out element of apparent agency. Here, we have the consent form that is clear and unambiguous that emergency room physicians are not employees of Decatur Memorial Hospital. What did the hospital do in order to make it appear as though Dr. Garcia was their employee? Correct. What's important is what the plaintiff actually knew or should have known and whether or not they had actual or constructive notice of the relationship with the independent consent form. We've discussed the time period of when it was signed, but also, in addition to the consent form, there were signs in both the waiting room and at each registration desk located in the emergency department. Where did the father sign the consent form? I'm not certain of that, Your Honor. Was it signed at a registration desk because didn't the father say he didn't see any signs? That is correct. The father has indicated that he did not see any signs, but it is undisputed that there were signs present in the waiting room on both ends of the waiting room and at each registration desk. What good is a sign if you don't see it? Whether or not the father saw the sign is really not the important analysis in this case. They were present. They were available to be seen by all who entered the waiting room and at the registration desk. What did the sign say? Similar to the consent form, it indicated that the individuals providing treatment in the emergency room physicians were not employees or agents of the hospital. Did it say who was? No, Your Honor. The trial court didn't seem to think much about the website. It seemed that the trial court went to the website. Did you see that in the order? Yes, Your Honor. But your website says find a doctor on it. Have you looked at that? Yes, Your Honor. When you go to find a doctor, it has Dr. Garcia on it. That is correct, Your Honor. And it lists his address as the address of the hospital and no independent corporation. Yes, Your Honor. Would you say that's a holding out of the doctor? No, Your Honor. Because the consent form and the signs that are posted in the registration rooms, when the individuals actually arrive at the emergency department, clearly identify that emergency room physicians are not employees or agents of the hospital. You don't think that might create an ambiguity or a question of fact because your own website asks you to find a doctor and it lists the emergency room physician? I understand that in a different factual situation, not present here, that maybe that plaintiff could establish an ambiguity or a dispute of fact. But those are not the facts that we are operating under in this case. And so there is no evidence from the plaintiffs that they believed Dr. Garcia to be an employee of DMH because they went to the website in advance of the care provided in October of 2010. Under Gilbert, do they have to do that? Under Gilbert, in order to survive a motion for summary judgment, the plaintiff must prove that each element of the Gilbert factors are present. And here, they are not. My question though was, under Gilbert, is it the holding out or is it the fact that the plaintiff has to go to the website? What is the test on that? Under Gilbert, in order to establish a parent agency, they must show that the hospital acted in a manner that would lead a reasonable person to conclude the individual who is alleged to be negligent was an employee or agent of the hospital. The second factor requires the plaintiff to show that the acts of the agent created an apparent authority. And finally, third, the plaintiff must have acted in reliance upon the conduct of the hospital or its agent. Those are the three factors under Gilbert that a plaintiff must show in order to establish a parent agency. So my question was, there's no, I guess I'll give you the answer. There's no requirement under Gilbert that the plaintiff visit the website in advance. It's enough that they know there's an emergency room, isn't it? Yes, Your Honor. But in order for the plaintiff in this case to have understood that Dr. Garcia was an employee of DMH, they must present some evidence of that fact. They have not. Instead, the evidence presented is that the consent form expressly disclaims that he was an employee of the hospital and the signs in the waiting room and at the registration desk also disclaim those facts. The plaintiff has failed to identify any fact that would defeat Decatur Memorial Hospital's motion for summary judgment. And the court did not err in granting summary judgment in favor of DMH. Why doesn't the doctor wear a name tag with his corporation on it or something on his lab coat that says he's not an employee? Well, I believe the facts in this case, Your Honor, is that the plaintiff did not recall what the doctor was wearing on his lab coat at the time that he provided treatment. Does he wear something that identifies him as a separate entity? I don't believe so, Your Honor. But here, again, there's no evidence that Dr. Garcia held himself out as a doctor for DMH. We don't have that evidence in this case. Well, who selected Dr. Garcia for treatment of the plaintiff? Dr. Garcia was assigned based on availability when plaintiffs arrived at the emergency room department. Did he have privileges at the Decatur Memorial Hospital to practice medicine? I believe so, yes, Your Honor. So he had to submit something to the hospital that the hospital would have approved him to treat patients? Correct, Your Honor. All right. Thank you. You may proceed. Thank you, Your Honor. All right. Here, the consent form that the hospital used was not ambiguous. The first sentence is expressly clear that DMH did not employ the emergency room physicians. Although there is a statement in the consent form that some other base physicians may be employees of the hospital and it identifies a phone number to call, that is really not an issue in this case. It's clear that Dr. Garcia was an emergency room physician. He was not some other physician. And because he was an emergency room physician, the consent form is not ambiguous as to his status as an independent contractor. Mr. Grady, are you familiar with the case of Williams versus Tisier MD OBGYN St. Elizabeth's Hospital? Yes, Your Honor. Justice Cates wrote that decision and that would seem to go against your position. How would you distinguish Williams? The consent forms, the consent form in this case is different from that identified in Williams. And here, the facts are distinguishable. Again, and I don't want to belabor the point, but the consent forms that are used in this case are similar to the consent forms that have been upheld by a number of other courts, including the James and Wallace decisions, James by James versus Ingalls Memorial Hospital and Wallace versus Alexian Brothers Medical Center. And the consent forms in this case are more similar to the consent forms in those case. And in those cases, James and Wallace summary judgment was upheld on behalf of the hospitals because the consent forms were unambiguous, clearly identified that the emergency room, the physician at issue and here the emergency room physician was not an employee of the hospital and instead was an independent contractor. What about the case of, and I can't pronounce the name properly, but Fraglio Giannis versus Sisters of St. Francis Health that talks about an after treatment starts consent. Doesn't that seem to create a fact issue that would not survive summary judgment? Don't we need to know whether the alleged negligent acts occurred before or after the consent was signed? And I disagree. The Decatur Memorial Hospital would disagree with that because if we were relying on the consent form alone, yes, that may just create a disputed material fact. But here we have both the consent form and the signs in the waiting room and at the registration deck desks. And because we have those additional forms and identification that the ER physicians were not independent, we're not employees of the hospital. Let me ask you this, but focusing on the consent forms for a second, my memory is that these parties, the plaintiffs had been to this hospital before and had maybe signed consent forms six or seven times previously. But is that, is that binding on their knowledge in this particular case? Your Honor, that's correct. They had signed at least five previous consent forms that were similar in nature to the one at issue related to this treatment. And it goes to the notice issue, whether or not the plaintiff had actual knowledge or know or should have known that the treatment that was being provided by the emergency room was that from an independent contractor. Mr. Grady, you said that the prior consent forms were similar, to use your words. Yes. If they weren't identical and the circumstances weren't identical, then why is the fact that they signed forms maybe four or five years ago relevant? We don't know the circumstances under which they signed those forms, do we? No, Your Honor. So how is that relevant? We don't even know what those prior forms said, do we? I believe the prior forms are in the, in the record. I don't have the site to those in the record in front of me, but they are in the record. They were attached to the reply motion for summary judgment filed in the, in the trial court. Okay. So the, they are in the record on the, in the reply, but we know nothing about the circumstances under which they were signed, right? That's correct, Your Honor. And Justice Vaughn's question to you, which I don't think you answered yet, goes to the issue of after, after the treatment began, that is when the consent was signed. And I think his question to you was, isn't it a question of fact as to whether the they signed the form? And the, the hospital's position is that we don't need to get to that analysis because we have the additional signs in the waiting room and at the registration desk that even if the consent form was signed at a later period of time, they knew upon entry to the emergency department, the information that would have for this apparent agency issue. And the plaintiff says he didn't know. So what you're saying is they should have known. Correct. Yes, Your Honor. Okay. Justice Walsh, any questions? No questions. Justice Vaughn? No questions. Thank you, Your Honor. Thank you, Mr. Grady. Ms. Burgess, you have a few minutes for rebuttal. Thank you, Your Honor. And I'll reply to just a few of the things that opposing counsel covered, starting with the consent, the language of the consent that was placed on signs throughout the hospital. And I wanted to clarify that while the record does show that there were a number of locations where those signs were present within the hospital, the only two locations that the patient in this particular case could have potentially saw the signs was in the emergency department waiting room and the emergency department registration desk. And as we know, the registration desk is not a place that Mr. Binkley visited until after care had begun and after Dr. Garcia had already begun treating Samantha. So that just leaves the emergency department waiting room. And as Your Honor has noted, Mr. Binkley has testified he did not see the signs there, which is reasonable under the circumstances because the testimony of the nurse who did their intake is that he brought his daughter into the emergency room waiting area, was placing her in a wheelchair. The nurse saw them and then took them immediately back into the triage area. So that creates a scenario where it is very reasonable that Mr. Binkley simply did not see the signs. Of course, even if he had, plain as contention is, the language was ambiguous to the extent that it could not overcome all of the other factors that would lead to a reasonable conclusion that the holding out element in this particular case has been met. Second, with regard to the additional consent forms that were signed, they are part of the record. They do contain language that is consistent with the consent form that is an issue in this particular case. But of course, it does not matter how many those consent forms were signed if the language was ambiguous. And this court has clearly stated that in Williams v. Tessier, this court said even though there were 13 prior consent forms, that was not determinative of this particular issue because everything put together created a genuine issue of material fact to be decided by the jury. And how many consent forms and the language in those particular consent forms was just a factor to be considered as a part of that analysis, and it was not dispositive. Further, while there were more multiple consent forms, his contention is that there is no case law stating that the forms signed by Samantha's mother have any bearing on this analysis because Samantha's mother is not the individual who took Samantha to the hospital that day, and she's not the individual who consented to Samantha's care and treatment, which leaves us with a singular form that was signed three years prior to the this particular form. And as a result, whether or not that, to what extent and what weight that particular information or that evidence should be given is part of the balancing of the factors in this case that needs to be done by the trier of fact and is not dispositive at the summary judgment stage. And finally, and we haven't talked about this yet, is the justifiable reliance element of the apparent agency analysis. And here the question is very to the point, and it is a less intensive analysis for the court to consider because the sole question there is, did the plaintiff seek out the care of the hospital, or did the plaintiff seek out the care of a physician? And here the evidence is undisputed that prior to the date of treatment that is an issue in this lawsuit, Samantha had never received a care from Dr. Garcia, had never met him, had never sought out his care before. The first and only time she met him was when he was assigned to her care at Decatur Memorial Hospital on the date that is an issue in this particular lawsuit. So as a result, the justifiable reliance element in this particular case has been met. And as a result, looking at all of the factors, but the holding out element, which is a factually intense analysis that generally is a question of fact and for a reason. And in this particular case, there are a number of different pieces of evidence to weigh into balance. However, to reiterate, the only evidence that the hospital and the defendant in this case has presented that Decatur Memorial Hospital had overcome or attempted to overcome the presumption that was created when it held itself out as a provider of medical care, that Dr. Garcia was its agent or employee, was that two sentence disclaimer. And whether or not that disclaimer was sufficient to overcome that is a question of fact that should be determined by the jury. And as a result, the trial court erred when it made this decision or entered judgment on this question as a matter of law. So plaintiff would respectfully request that this court overturn the judgment of the trial court and to send this particular case back down to the trial court for further proceedings on this particular issue. Thank you. Thank you. Justice Welch, questions? No questions. Justice Follin? No questions. Okay. Thank you both for your arguments today. This is a very interesting case. The matter will be taken under advisement and we will issue an order in due course.